**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

YILMAZ GUNES,

                                 Petitioner,                    9:26-cv-00525 (BKS)

v.

WARDEN, BROOME COUNTY CORRECTIONAL
FACILITY; FIELD OFFICE DIRECTOR, ICE BUFFALO
FIELD OFFICE; MARKWAYNE MULLIN, in his official
capacity as Secretary of Homeland Security; TODD
BLANCHE, in his official capacity as Acting Attorney
General of the United States,[1]

                                 Respondents.

---

**Appearances:**

*For Petitioner:*
Ibrahim Caglar
Caglar & Associates, PLLC
100 Church St., 8th Floor, Suite 800
New York, NY 10007

*For Respondent Warden, Broome County Correctional Facility:*
Cheryl Sullivan
Broome County Attorney
Joshua T. Terrell
Assistant County Attorney II
60 Hawley Street
Binghamton, NY 13901

*For Respondents Field Office Director, Markwayne Mullin and Todd Blanche:*
David M. Katz
Assistant United States Attorney
United States Attorney's Office
P.O. Box 7198
100 South Clinton St.
Syracuse, NY 13261

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Acting Attorney General, Todd Blanche, has been substituted for his predecessor, Attorney General Pamela Bondi. The Clerk is directed to amend the docket accordingly.

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

On April 1, 2026, Yilmaz Gunes, a noncitizen, filed a petition pursuant to 28 U.S.C. § 2241 seeking a writ of habeas corpus releasing him from immigration detention, or, alternatively, ordering a new bond hearing. (Dkt. No. 1). Upon review of the petition, the Court issued an Order: directing Respondents to show cause why the petition should not be granted; setting a briefing schedule; scheduling oral argument; and prohibiting Respondents from moving Petitioner outside the jurisdiction of the Northern District of New York while this matter is pending. (Dkt. No. 2). Respondents, the Warden of Broome County Correctional Facility, the Field Office Director of the ICE Buffalo Field Office, Markwayne Mullin, Secretary of Homeland Security, and Todd Blanche, Acting Attorney General of the United States, have filed responses. (Dkt. Nos. 5, 8). Petitioner has filed a reply. (Dkt. No. 6). On April 28, 2026, the Court held oral argument. For the reasons that follow, the petition is granted to the extent it seeks a new bond hearing.

## II.     BACKGROUND[2]

Petitioner is a citizen of Turkey and Bulgaria. (Dkt. No. 1, ¶ 1). Petitioner "first entered the United States in or around 1996 after abandoning a Turkish commercial vessel on which he was working as a crewman." (*Id.* ¶ 39). Petitioner resided in the United States until February 2012, "when he departed to Turkey." (*Id.* ¶ 39; Dkt. No. 5-2, at 9).

On August 15, 2012, Petitioner re-entered the United States, through Mexico, near Lukeville, Arizona, without inspection. (Dkt. No. 5-2, at 9; Dkt. No. 1, ¶ 40). On or about

---

[2] Unless otherwise noted, the facts are not disputed.

August 17, 2012, a Border Patrol agent encountered Petitioner in Arizona and, after determining Petitioner had entered the United States illegally, arrested and detained Petitioner. (Dkt. No. 5-2, at 5). An asylum officer determined Petitioner had a credible fear of persecution or torture and, on or about January 18, 2013, Petitioner was issued a Notice to Appear before the immigration court for removal proceedings (the "2013 removal proceedings"). (*Id.* at 14–15). On February 7, 2013, Petitioner was released on a $6,000 bond. (*Id.* at 16). On May 12, 2015, the immigration court administratively closed Petitioner's removal proceedings. (*Id.* at 17 ("[P]roceedings administratively closed – prosecutorial discretion.")). In his reply brief, Petitioner asserts that "[h]is connections to the United States—however legally characterized—span the majority of his adult life." (Dkt. No. 6, at 6).

On December 21, 2025, Border Patrol was alerted to "two male subjects walking out of [a] wooded area" on a "rural road," in Mooers Forks, New York and then getting into a black sedan. (Dkt. No. 5-2, at 21). The area was known to Border Patrol as one "popular for illicit activity related to illegal entry into the United States." (*Id.*). Border Patrol conducted a vehicle stop for immigration inspection. (*Id.*). Petitioner was one of two passengers in the vehicle, and though he claimed he lived in the United States, he could not affirm his citizenship and was transported to the Border Patrol station for further investigation. (*Id.* at 22). At the station, Petitioner "admitted to illegally crossing into the United States from Canada," that he was "a national and citizen of Turkey," and that he had "no legal documentation" authorizing him to be in the United States. (*Id.*). Petitioner was detained at Clinton County Correctional Facility pending "criminal and immigration proceedings." (Dkt. No. 1-1, at 11).

Petitioner was referred for criminal prosecution in the United States District Court for the Northern District of New York. (*Id.*; Dkt. No. 5-2, at 24). On December 23, 2025, Petitioner

entered a plea of guilty to improper entry by an alien, in violation of 8 U.S.C. § 1325(a)(2), and was sentenced to time served. (Dkt. No. 5-2, at 24). "ICE then assumed custody of Petitioner for civil immigration detention," and transferred Petitioner first to the Buffalo Federal Detention Facility, and then to the Broome County Correctional Facility, where he remains detained. (Dkt. No. 1, ¶ 43).

Initially, the Department of Homeland Security ("DHS") "processed" Petitioner as "an expedited removal," (Dkt. No. 5-2, at 22), but on January 29, 2026, moved to "recalendar" the 2013 removal proceedings, (*id.* at 25). The immigration court granted DHS's motion. (*Id.*). According to the Government, Petitioner filed a "Form I-589, Application for Asylum and for Withholding of Removal, before the immigration court." (Dkt. No. 5-1, ¶ 15).

While in detention, Petitioner requested a bond hearing. (Dkt. No. 5-2, at 27). On February 20, 2026, the immigration court held a bond hearing and denied release, finding Petitioner "presents as a flight risk for which no bond amount would be sufficient to ensure his return to Court." (*Id.*). At oral argument, the parties advised the Court that on April 14, 2026, the immigration court denied Petitioner's request for asylum and ordered removal. Petitioner is appealing that decision, thus the order of removal is not final.

## III.    JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6, 2018 U.S. Dist. LEXIS 98712, at *15 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

IV.    DISCUSSION

A.    Applicable Statutes

Petitioner asserts that his detention is unlawful because Respondents are detaining him pursuant to the agency policy that all individuals who entered the United States without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Dkt. No. 1, ¶ 2). Petitioner contends that § 1225(b)(2) "does not apply to individuals who have already entered and are now residing in the United States," and that any detention is governed instead by the discretionary detention provisions of § 1226(a). (*Id.* ¶¶ 2, 4). The Government responds that: (1) because Petitioner was apprehended and arrested "close in time and space to his crossing the border," his initial warrantless arrest and detention were lawful and authorized under 8 U.S.C. §§ 1357(a) and 1225(b)(1), (Dkt. No. 5, at 8); (2) Petitioner's detention from December 23, 2025, the date he was returned to ICE custody following his conviction, to January 29, 2026, the date the immigration court recalendared the 2013 removal proceeding, was mandatory under 8 U.S.C. § 1225(b)(1) because Petitioner was being "processed as expedited removal," (*id.*; *see also* Dkt. No. 5-2, at 22, 24–25));[3] and (3) notwithstanding the authority to the contrary, Petitioner is subject to mandatory detention under § 1225(b)(2) during the non-expedited removal proceeding "because he entered without inspection and resumed his removal proceedings before the immigration court," (Dkt. No. 5, at 8, 14).

The Government's response suggests that different statutory provisions may have applied at different points since Petitioner's December 21, 2025 arrest. The Court agrees. *See Rivera Castillo v. Rhoney*, No. 25-cv-1065, 2026 WL 775995, at *3, 2026 U.S. Dist. LEXIS 57947, at *7 (W.D.N.Y. Mar. 19, 2026) (explaining that "[t]he 'statutory scheme governing the detention

---

[3] The Form I213, dated December 22, 2023, the day after Petitioner's arrest, contains a notation stating Petitioner "will be processed as an expedited removal." (Dkt. No. 5-2, at 22).

of aliens in removal proceedings is not static; rather, the Attorney General's authority over an alien's detention shifts as the alien moves through different phases of administrative and judicial review'" (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 945 (9th Cir. 2008)). Moreover, it is helpful to identify the governing statutory provision for each phase as each provision guides the process due at that stage.

Petitioner was apprehended and arrested "close in time and space to his crossing the border," (Dkt. No. 5, at 8), and does not dispute that his warrantless arrest was authorized under 8 U.S.C. § 1357(a)(2) (authorizing immigration officers to arrest "without warrant . . . any alien who in his presence or view is entering or attempting to enter the United States in violation of any law"). Nor does Petitioner dispute that his detention from his arrest on December 21, 2025, through his guilty plea and sentencing to time served on December 23, 2025, was lawful. When, on December 23, 2025, Petitioner was returned to ICE custody, DHS continued processing Petitioner for expedited removal. (Dkt. No. 5-1, ¶ 13). As the Second Circuit has observed, under 8 U.S.C. § 1225(b)(1)(A)(i), noncitizens subject to expedited removal "must be detained." *Cunha v. Freden*, No. 25-3141-PR, -- F.4th --, 2026 WL 1146044, at *14, 2026 U.S. App. LEXIS 12201, at *45 (2d Cir. Apr. 28, 2026) ("Noncitizens who just arrived without documentation or who misrepresented themselves are subject to expedited removal and must be detained. Noncitizens who snuck across the border less than two years ago may be treated the same way, but only if so designated by the Attorney General.") (internal citation omitted) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)). Thus, Petitioner's detention during expedited removal proceedings—from December 23, 2025 to January 29, 2026, when the immigration court recalendared the 2013 removal proceedings—appears to have been mandatory under 8 U.S.C. §

1225(b)(1)(A)(i).[4] It is at this point, the recalendaring of the 2013 (non-expedited) removal proceedings on January 29, 2026, that the parties disagree as to whether the mandatory detention provisions in § 1225(b)(2) or the discretionary detention provisions in § 1226(a) apply.

The Government appears to concede that despite Petitioner's apprehension shortly after entering the country (which would appear to place him squarely within § 1225(b)(2) pending removal), because DHS discontinued the expedited removal proceedings and recalendared the 2013 removal proceedings, (Dkt. No. 5-2, at 25), Petitioner stands in a "factual scenario[] not materially different or distinguishable," (Dkt. No. 5, at 8), from the cases where courts have rejected the Government's argument that § 1225(b)(2) requires the mandatory detention of all "noncitizens who are present in the United States after entering the country without inspection and admission," *Cunha*, 2026 WL 1146044, at *2, 2026 U.S. App. LEXIS 12201, at *2. Indeed, the 2013 removal proceedings involved the issuance of an I-200 Warrant of Arrest and a Notice to Appear specifically identifying Petitioner, not as "an arriving alien," but as "an alien present in the United States," (Dkt. No. 1-1, at 3; Dkt. No. 5-2, at 3), and reflect procedures that are consistent with § 1226(a), including a bond hearing, (Dkt. No. 5-2, at 16),[5] *see* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); *see also Arevalo v. Barr*, 950 F.3d 15, 18 (1st Cir. 2020) (explaining that "recalendar," in the context of removal proceedings, "means simply to reinstate the case to the active docket in the same posture as it occupied when it was paused for administrative closure . . . placing it back on the active

---

[4] Petitioner has not disputed the Government's argument regarding mandatory detention during expedited removal proceedings in his reply or at oral argument.

[5] The 2013 proceedings appear to have begun as standard removal proceedings, changed to expedited removal, (*compare* Dkt. No. 5-2, at 1 ("Disposition: Warrant of Arrest/Notice to Appear), *with id.* 4 ("Disposition: Expedited Removal)), and appears to have shifted again to standard "removal proceedings," (*see id.* at 16–17). The Government offers no explanation regarding the significance of any of these changes.

docket in essentially the same posture that it occupied immediately before the administrative closure occurred"). Accordingly, the Court concludes that Petitioner's detention from January 29, 2026 to date is governed by the discretionary detention provisions of § 1226(a).

Citing *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and Petitioner's apprehension shortly after crossing the border, the Government argues that notwithstanding § 1226(a)'s discretionary detention provisions, Petitioner has received all the process to which he is entitled. (Dkt. No. 5, at 15–18). In *Thuraissigiam*, the respondent, a noncitizen, was stopped within 25 yards of the border, arrested for attempting to enter the United States illegally, and detained for expedited removal. *Thuraissigiam*, 591 U.S. at 107, 114. The respondent sought asylum but after an asylum officer, supervisor, and immigration judge, found he did not have a credible fear, his case was returned for removal. *Id.* at 114. The respondent filed a habeas petition under § 2241 seeking a new opportunity to apply for asylum, but not release. *Id.* Reviewing the recently expanded expedited removal procedures, the Supreme Court found the relief requested fell outside the scope of the writ of habeas corpus, *id.* at 119, and rejected the respondent's claim that the immigration laws violated his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding, *id.* at 138. The Court found that:

> Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. Respondent attempted to enter the country illegally and was apprehended just 25 yards from the border. He therefore has no entitlement to procedural rights other than those afforded by statute.

*Id.* at 107 (internal citation omitted).

*Thuraissigiam* appears similar at first glance: here (as there), Petitioner was apprehended shortly after crossing the border and was subject to expedited removal proceedings. But in this

case, DHS abandoned expedited removal proceedings and sought the recalendaring of the 2013 (non-expedited) removal proceeding. That proceeding, as discussed above, is governed by § 1226(a)'s discretionary detention provisions, and thus vests Petitioner with § 1226(a)'s corresponding rights. *See Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 143 (W.D.N.Y. 2025) ("Because DHS chose to place [the petitioner] in section 240 proceedings instead of pursuing expedited removal in the first instance—even though it was not required to do that—the government vested [the petitioner] with the rights that Congress guaranteed non-citizens in those proceedings."). Thus, the Court finds *Thuraissigiam* inapplicable. *See Augustin v. Sava*, 735 F.2d 32, 36 (2d Cir. 1984) ("Although [noncitizens] who petition for admission have no constitutional rights regarding their applications, they do have such statutory rights as Congress grants." (footnote omitted)); *see also Aviles-Mena v. Kaiser*, No. 25-cv-06783, 2025 WL 2578215, at *4, 2025 U.S. Dist. LEXIS 173976, at *8 (N.D. Ca. Sept. 5, 2025) (finding *Thuraissigiam* inapplicable because the petitioner's "habeas petition challenges his detention, not his 'admission'").

Therefore, the Court finds Petitioner's present detention, pending ongoing removal proceedings, is governed by § 1226(a). Accordingly, the Court turns to whether the Respondents' detention of Petitioner violates his due process rights.

### B.      Due Process and Remedy

Preliminarily, the Court notes Petitioner was detained under circumstances far different than those in *Gaspar v. Akshar*, No. 26-cv-00118, 2026 WL 699369, at *9, 2026 U.S. Dist. LEXIS 51783, at *22–23 (N.D.N.Y. Feb. 17, 2026), where the Court ordered immediate release. There, the petitioner had special immigrant juvenile status, had been granted deferred action, and was on the path to receiving a visa when he was detained by ICE for no apparent reason. *Id.* 2026 WL 699369, at *9, 2026 U.S. Dist. LEXIS 51783, at *22–23. The Government argued that

the petitioner was taken into custody under 8 U.S.C. § 1225(b)(2)(A), without any assessment of individualized circumstances, and subject to mandatory detention. In contrast, here ICE detained Petitioner after he was arrested for improper entry into the United States by "elud[ing] examination or inspection by immigration officers," in violation of 8 U.S.C. § 1325(a)(2), and Petitioner pled guilty to that charge.[6] Here, the Court finds that immediate release would not be an appropriate remedy. *See Rahman v. Catletti*, No. 26-cv-3054, 2026 WL 1180138, at *2, 2026 U.S. Dist. LEXIS 96787, at *5 (S.D.N.Y. Apr. 30, 2026) (finding the petitioner was not entitled to release where record showed that "ICE exercised discretion by detaining [the petitioner] based on his prior arrest"); *Sharifzoda v. Orange Cnty. Jail*, No. 26-cv-02486, 2026 WL 851378, at *2, 2026 U.S. Dist. LEXIS 74004, at *6 (S.D.N.Y. Mar. 27, 2026) (same). Accordingly, the Court turns to Petitioner's argument that his bond hearing violated due process.

Petitioner argues that the bond hearing he received was constitutionally deficient because the immigration judge improperly allocated the burden of proof to him, rather than the Government. (Dkt. No. 6, at 1–2). The Government asserts that even assuming § 1226(a) applies to Petitioner's detention, because he received a bond hearing, Petitioner received all the process he was due. (Dkt. No. 5, at 19).

The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This protection "applies to all 'persons' within the

---

[6] Although Petitioner asserts that his challenge "is not merely that he has been detained too long—it is that he was detained from the outset under an unlawful statutory authority," (Dkt. No. 6, at 8), Petitioner has not provided any support for that argument..

10

United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The "essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)). Habeas review is available to challenge "the lawfulness of detention when it is first imposed" as well as "to challenge whether, at some point, an ongoing detention has become unlawful." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* at 850 (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).

In evaluating procedural due process, courts apply the "three-factor balancing test as provided in *Mathews v. Eldridge*[.]" *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 335). "The three *Mathews* factors are: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Id.*

As to the first factor, Petitioner's "interest in being free from imprisonment" is "the most significant liberty interest there is," *id.*, and it "cannot be abridged without 'adequate procedural protections," *Singh v. Maldonado*, No. 26-cv-00019, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (E.D.N.Y. Jan. 29, 2026) (quoting *Zadvydas*, 533 U.S. at 690). Petitioner has established his liberty interest. *See id.*, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS

11

17311, at \*27 (finding the petitioner's "liberty interest" in being free from imprisonment was clearly established). Thus, the Court finds the first *Mathews* factor weighs in Petitioner's favor.

The second factor—"the risk of an erroneous deprivation . . . through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"—also weighs in Petitioner's favor. *Velasco Lopez*, 978 F.3d at 851 (internal quotation marks omitted). As discussed, Petitioner's initial arrest and detention while ICE pursued expedited removal appears to have comported with the statutory and due process requirements. However, once DHS obtained recalendaring of the 2015 removal proceedings, the authority for Petitioner's detention shifted to § 1226(a), which provides for a bond hearing. Although it is undisputed that a bond hearing was held on February 20, 2026, and that the immigration judge conducted an individualized determination, the immigration judge assigned Petitioner the burden of proving by clear and convincing evidence that he was not a flight risk or a danger to the community and denied bond on the ground that Petitioner could not establish that he was not a flight risk. Here, the immigration judge's findings were detailed and the outcome may be no different even if the burden is shifted. But in light of the lengthening detention, nearing six months, the Government's acknowledgement at oral argument that Petitioner could be facing "months" in custody while the appeal proceeded, and the risk of deprivation of liberty, the Court finds a hearing at which the burden is shifted to the Government would provide a safeguard against erroneous deprivation of liberty. *Velasco Lopez*, 978 F.3d at 853 ("'[A]s the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." (quoting *Zadvydas*, 533 U.S. at 701)).

The third factor in the *Mathews* analysis requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. It is well-established that "'the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose,'" and that "[t]he Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690). "'[I]n striking the appropriate due process balance the final factor to be assessed is the public interest,'" which "include[s] 'the administrative burden and other societal costs that would be associated with' the additional process." *Velasco Lopez*, 978 F.3d at 855 (quoting *Mathews*, 424 U.S. at 347). Here, the Government has not identified any interest that "might counsel against its bearing the burden of proof by clear and convincing evidence." *Ortiz v. Freden*, 808 F. Supp. 3d 579, 600 (W.D.N.Y. 2025); *see Velasco Lopez*, 978 F.3d at 854–55 ("The Government has not convinced us that requiring it to justify [a petitioner's] detention by clear and convincing evidence substantially undermines its legitimate interests or entails an undue administrative burden."). The Court notes that district courts in this Circuit have concluded that the Government should bear the burden of proof, even early in proceedings. *See*, *e.g.*, *G.F.F. v. Francis*, No. 25-cv-7368, 2025 WL 3141735, at *5 n.2, 2025 U.S. Dist. LEXIS 221779, at *12 n.2 (S.D.N.Y. Nov. 10, 2025) ("[T]he Government's assertion that eleven months' detention is insufficiently lengthy to trigger a bond hearing that places the burden of proof on the Government is difficult to reconcile with the 'overwhelming consensus of judges in this District' that noncitizens detained under § 1226(a) are entitled to such a proceeding even at

13

their initial bond hearings." (quoting *Fernandez Aguirre v. Barr*, No. 19-cv-7048, 2019 WL 3889800, at *3, 2019 U.S. Dist. LEXIS 140065, at *7 (S.D.N.Y. Aug. 19, 2019)); *Quintanilla v. Decker*, No. 21-cv-417, 2021 WL 707062, at *3, 2021 U.S. Dist. LEXIS 32633, at *9 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this district in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention") (quotation marks omitted).

The Government argues that "[p]rejudice is an essential element of a due process claim," and that "due to a confluence of unique events, Petitioner cannot prove prejudice here because he received the very post-detention custody review process envisioned by § 1226(a)." (Dkt. No. 5, at 19 (citing *Lyttle v. Garland*, No. 21-6389, 2023 WL 2594001, at *2, 2023 U.S. App. LEXIS 6860, at *4 (2d Cir. Mar. 22, 2023)). Indeed, "[p]arties claiming denial of due process in immigration cases must, in order to prevail, 'allege some cognizable prejudice fairly attributable to the challenged process.'" *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (quoting *Lattab v. Ashcroft*, 384 F.3d 8, 20 (1st Cir. 2004)). In this case Petitioner argues he has no pending criminal liability, his connections to the United States "span the majority of his adult life," he was previously released on bond by an immigration judge following illegal re-entry, has been "held in continuous . . . detention for over 115 days" (as of the filing of the reply brief on April 13, 2026), and his "removal proceedings remain at an early stage with no resolution in sight." (Dkt. No. 6, at 6–7). At oral argument, Petitioner's attorney represented that though he has no immediate family in the United States, he has relatives, friends, and strong ties to his work and his community in New York, and has lived most of his life in the United States. On the current record, "because the errors of which Petitioner complains clearly could have influenced the outcome of his bond hearing," the Court declines to find an absence of prejudice by

14

speculating about "what would have happened had the IJ complied with the requirements of due process." *O.F.C. v. Decker*, No. 22-cv-2255, 2022 WL 4448728, at *9 n.6, 2022 U.S. Dist. LEXIS 177255, at * n.6 (S.D.N.Y. Sept. 12, 2022) (distinguishing the errors asserted by the petitioner from the "errors" in *Garcia-Villeda*, which "could not have had an influence on the outcome of proceedings" (citing *Garcia-Villeda*, 531 F.3d at 149)). Thus, the Court declines to deny this petition based on an absence of prejudice.

Having considered the relevant factors, the Court concludes that under the present circumstances, Petitioner "is entitled under § 1226 to a prompt bond hearing consistent with due process 'at which the Government bears the burden of proving, by clear and convincing evidence, that [he] is a danger to the community or a flight risk.'" *Rahman*, 2026 WL 1180138, at *2, 2026 U.S. Dist. LEXIS 96787, at *6 (quoting *Guedez v. Catletti*, No. 26-cv-02463, 2026 WL 962575, at *2, 2026 U.S. Dist. LEXIS 80723, at *4 (S.D.N.Y. Apr. 9, 2026)). Because the burden of proof was assigned to Petitioner during the February 20, 2026 bond hearing, it did not comport with due process and a new hearing is required. *See*, *e.g.*, *id.* 2026 WL 1180138, at *2–3, 2026 U.S. Dist. LEXIS 96787, at *6 (ordering new bond hearing where immigration judge denied bond on incorrect premise that the petitioner was subject to mandatory detention and directing that the Government bear the burden of proof by clear and convincing evidence at new hearing).

V.    **CONCLUSION**

Accordingly, it is

15

**ORDERED** that the petition (Dkt. No. 1) is **GRANTED** as to his Fifth Amendment due process claim but is otherwise **DENIED**;[7] and it is further

**ORDERED** that DHS shall provide Petitioner with a new bond hearing by June 1, 2026, at which the Government shall bear the burden of proof by clear and convincing evidence; and it is further

**ORDERED** that the Government shall file a status report regarding the bond hearing by June 9, 2026; and it is further

**ORDERED** that Petitioner's request for an award of attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412 is **GRANTED**, and any application for such fees and costs shall be filed by June 15, 2026. Respondents may file a response by June 29, 2026;  and it is further

**ORDERED** that the Clerk is directed to amend the docket to substitute Todd Blanche, Acting United States Attorney for Pam Bondi, United States Attorney; and it is further

**ORDERED** that the Clerk is directed to enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: <u>May 18, 2026</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[7] Petitioner advanced no meaningful argument with respect to his request that the Court "[d]eclare that Respondents' actions violate the Administrative Procedure Act." (Dkt. No. 1, at 17). Accordingly, this request is denied.

16